**RYKO MANUFACTURING CO.,**
Plaintiff–Appellant,

v.

**NU–STAR, INC., Defendant–Appellee.**

No. 91–1065.

United States Court of Appeals,
Federal Circuit.

Dec. 4, 1991.

Sheldon W. Witcoff, Allegretti & Witcoff, Ltd., Chicago, Ill., argued (Ronald E. Larson, on brief), for plaintiff-appellant.

David R. Fairbairn, Kinney & Lange, P.A., Minneapolis, Minn., argued (Judson K. Champlin, on brief); Thomas J. Stueber, Kinney & Lange, P.A., of counsel, for defendant-appellee.

Before RICH, Circuit Judge, SMITH, Senior Circuit Judge, and NEWMAN, Circuit Judge.

EDWARD S. SMITH, Senior Circuit Judge.

Ryko Manufacturing Co. (Ryko) sued Nu–Star, Inc. (Nu–Star) for infringing its reissue patent Re. 32,601 ('601). The United States District Court for the District of Minnesota granted Nu–Star's motion for summary judgment based on invalidity, determining that the patented invention would have been obvious in light of the prior art. Ryko appeals, and we affirm.

## Facts

Conventional automatic car washes were activated by mechanical insertion devices. These devices activated the carwash sys-

tem by permitting electrical current to flow through the system when an appropriate article such as a coin, token, credit card or receipt was inserted into the device. The device required much maintenance because the mechanical hardware could cause problems or the device could become congested with too many inserted articles.

Many attempts were made to solve these problems, and a solution was discovered when Klein invented the device disclosed in reissue patent '601 which was assigned to Ryko. The '601 patent discloses a combination comprising an automatic car wash system electronically activated by an electrical numerical keypad device.

Nu–Star also sells an automatic car wash system which utilizes an electronic keypad activation device. Ryko sued Nu–Star for infringing claim seven of its patent. Nu–Star countered with its motion for summary judgment.

After considering all the primary considerations enumerated in *Graham v. John Deere,*[1] the district court found that utilization of the numerical keypad device to electronically activate an automatic car wash system was a combination invention that was clearly suggested by the prior art. Therefore, the district court determined that, at the time the invention was made, it would have been obvious to a person of ordinary skill in the art. The district court found that the secondary considerations purportedly weighed in favor of nonobviousness, but were not sufficiently influential to override the finding of obviousness compelled by the primary considerations.

Accordingly, the district court granted Nu–Star's motion for summary judgment. Ryko appeals to this Court asserting various errors in the district court's rationale.

## Standard of Review

A patent is presumed valid.[2] To overturn a patent, the challenger must clearly prove those facts which support

1. 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966).

2. 35 U.S.C. § 282 (1988).

patent invalidity.[3] Here, the appellee asserts that the patent is invalid because the invention of claim seven would have been obvious. "While the ultimate question of patent validity is one of law," the conclusion that an invention would not have been obvious is dependent upon several basic factual inquiries.[4] Therefore, a district court can properly grant, as a matter of law, a motion for summary judgment on patent invalidity when the factual inquiries into obviousness present no genuine issue of material facts.[5]

### The Nonobviousness Condition

■ A patent is invalid

if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.[6]

In determining whether an invention would have been obvious at the time it was made, section 103 requires a court (1) to determine the scope and content of the prior art; (2) to ascertain the differences between the prior art and the claims at issue; and (3) to resolve the level of ordinary skill in the pertinent art.[7] "Such secondary considerations as commercial success, long felt but unsolved needs, [and] failure of others" [to invent] are also relevant to the obviousness inquiry.[8] Since the facts to support a conclusion of invalidity of an issued patent must be proved by clear and convincing evidence, this standard must be applied by the court in deciding whether requirements have been met for summary determination of obviousness.[9]

### Primary Considerations

1. Scope and Content of the Pertinent Prior Art

*a. Scope of the Pertinent Prior Art*

■ The district court accepted the concession by both parties that the pertinent art encompassed automatic car washing systems. However, we feel that such a definition of the pertinent art is too broad. The art of automatic car washing systems involves technologies ranging from hydraulics and fluid mechanics to electronic microcircuitry. Questioning whether the invention would have been obvious to one having ordinary skill in the art of automatic car washing systems is too imprecise to illuminate the obviousness inquiry.

The relevant art "is defined by the nature of the problem confronting the would-be inventor."[10] Here, the problem entailed permitting only selected people to activate an automatic car wash system with a device not subject to mechanical problems. Accordingly, the inventor sought to discover the most convenient and efficient activation device for the purpose. Thus, the relevant art did not encompass automatic car washing systems but rather activation devices for such systems.

*b. Content of the Pertinent Prior Art*

The district court evidently accepted and Ryko did not dispute Nu–Star's description of the prior art. The evidence of prior art indicated that: Automatic car wash equipment was common; automatic activation by a token, credit card, receipt or coins was common; automatic activation had been connected to a garage door opening mechanism; keypad code devices were common as electronic signal input devices, keypad code devices opened garage doors; keypad

3. *American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1360, 220 USPQ 763, 770 (Fed.Cir.1984).

4. *Graham,* 383 U.S. at 17, 86 S.Ct. at 693.

5. Fed.R.Civ.P. 56(c).

6. 35 U.S.C. § 103 (1988).

7. *Graham,* 383 U.S. at 17, 86 S.Ct. at 693.

8. *Id.* at 17–18, 86 S.Ct. at 693–694.

9. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

10. *Orthopedic Equip. Co. v. United States,* 702 F.2d 1005, 1008, 217 USPQ 193, 196 (Fed.Cir. 1983) (citing *Weather Engineering Corp. of America v. United States,* 614 F.2d 281, 287, 222 Ct.Cl. 322, 328, 204 USPQ 41, 46–47 (1980)).

code devices limited access to many products; enter keys were implemented in keypad entry devices; and computers and digital circuitry were well-known and used for a variety of applications in the car wash industry.

The prior art references that are particularly pertinent to the patented activation device in question are the keypad code devices that opened garage doors and the automatic car wash systems which were activated by a mechanical insertion device (*i.e.* coins, credit card, etc.). With the undisputed pertinent prior art in perspective, there exists no genuine issue of material fact as to the scope and content of the pertinent prior art.

2. Difference Between the Prior Art and the Claims at Issue

   a. *The Claim at Issue*

   ■ The only '601 patent claim at issue is claim seven. Claim seven comprises a car washing system which is activated by a keypad entry system. To activate the car wash, the operator punches his numerical code into the numerical keypad. After entering the code, the operator presses a designated button which electronically transmits the inputted numerical code for comparison with a predetermined numerical code. If the inputted numerical code matches the predetermined numerical code, the circuit is closed between the electrical power source and the car wash system, thereby activating the latter.

   b. *Differences Between Prior Art and Claim Seven*

   The district court determined that the difference between the prior art and the claim at issue was essentially the substitution of a keypad code device for a coin box or other common input device. Appellant insists that focusing on only one element of

the claimed invention, instead of the claim as a whole is legal error according to *W.L. Gore & Associates v. Garlock, Inc.*[11] We believe that appellant interprets *Gore* too expansively.

■ *Gore* simply requires the court to evaluate the claim as a whole and not to unduly focus on one facet of the claimed invention.[12] However, *Graham* instructs the court to ascertain the principal differences between the patented claim and the prior art.[13] In evaluating claim seven as a whole, the district court found only one difference disclosed by claim seven that was not taught by the prior art: the supplantation of other carwash system activation devices with an electronic keypad activation device. When analyzing a patent claim for obviousness, the claim should be considered as a whole, but the differences between the claim and the prior art need to be identified to place the obviousness analysis into proper perspective.

■ Appellant also argues that the district court erred by denigrating claim seven as being a combination of old elements lacking synergism. We do agree that the absence of synergism is irrelevant to the issue of obviousness.[14] Synergism is probative only of nonobviousness; the obverse is not true.[15] However, we do not believe the district court's misunderstanding of this particular point of law sufficiently tainted its ultimate decision on obviousness to constitute reversible error.

We note also that the district court has implied that "combination inventions" are to be treated differently from other inventions. The Federal Circuit has dispelled this notion. The language of this court in *Stratoflex, Inc. v. Aeroquip Corp.*[16] is instructive on this point:

> There is no warrant for judicial classification of patents, whether into "combination" patents and some other unnamed

11. 721 F.2d 1540, 1548, 220 USPQ 303, 309 (Fed. Cir.1983), *cert. denied,* 469 U.S. 851, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984).

12. 721 F.2d at 1548.

13. 383 U.S. at 17, 86 S.Ct. at 693.

14. *American Hoist & Derrick,* 725 F.2d at 1360, 220 USPQ at 771.

15. *Id.*

16. 713 F.2d 1530, 218 USPQ 871 (Fed.Cir.1983).

and undefined class or otherwise. Nor is there warrant for differing treatment or consideration of patents based on a judicially devised label. Reference to "combination" patents is, moreover, meaningless. Virtually *all* patents are "combination patents", if by that label one intends to describe patents having claims to inventions formed of a combination of elements. It is difficult to visualize, at least in the mechanical-structural arts, a "non-combination" invention, i.e., an invention consisting of a *single* element. Such inventions, if they exist, are rare indeed.[17]

For a "combination" or any other invention to have been obvious, the prior art must suggest the desirability of making the claimed invention.[18] We conclude that the district court correctly determined the scope of the pertinent prior art and compared it to the claimed invention to ascertain the salient differences.

Because the first and second *Graham* considerations present no genuine issues of material fact, the district court was in a position at that point to determine whether prior art would have suggested the claimed combination. The penultimate question then was what person, in terms of skill levels, would reasonably have perceived the suggestion.

### 3. Level of Ordinary Skill in the Pertinent Art

■ Appellant asserts legal error in the failure of the district court to resolve the level of ordinary skill in the art. The importance of resolving the level of ordinary skill in the art lies in the necessity of maintaining objectivity in the obviousness inquiry. Instead of ascertaining what was subjectively obvious to the inventor at the time of invention, the court must ascertain

what would have been objectively obvious to one of ordinary skill in the art at such time.[19] Hence, the level of ordinary skill in the art is a factual question that must be resolved and considered.

■ The district court did consider the level of ordinary skill in the art, but did not articulate its resolution of the issue. Probative of the required level of skill in the art are factors such as educational level of the inventor, educational level of those who work in the industry which manufactures powered system activation devices, and the sophistication of technology involved, all of which was before the trial court.[20] Appellee's evidence shows that most of the personnel developing the new activation device for Ryko had attained an engineering degree at the minimum. However, appellant's expert vaguely described the level of ordinary skill in the art as being "low to medium."

When a motion for summary judgment is before the court, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."[21] For the sake of review, we assume that the district court believed the non-movant appellant's evidence, that the ordinary skill in the art was low to medium. However, appellant's evidence does not explain to what the low to medium level of skill in the art is related.

Appellee's uncontested evidence indicated that two of the three inventors of the patented device have engineering degrees. One designer of an accused infringing product has a masters degree in electrical engineering, and another has worked in the electronics industry for 28 years. Moreover, the prior art teaches that powered system activation devices utilize sophisticated electronic devices. Based on the undisputed evidence before it and all justi-

---

**17.** *Id.* at 1540, 218 USPQ at 880.

**18.** *Interconnect Planning Corp. v. Feil,* 774 F.2d 1132, 1143, 227 USPQ 543, 551 (Fed.Cir.1985).

**19.** *Kloster Speedsteel AB v. Crucible Inc.,* 793 F.2d 1565, 1574, 230 USPQ 81, 86 (Fed.Cir.1986), *cert. denied,* 479 U.S. 1034, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987).

**20.** *Orthopedic Equip. Co. v. All Orthopedic Appliances,* 707 F.2d 1376, 1382, 217 USPQ 1281, 1285 (Fed.Cir.1983).

**21.** *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)).

fiable inferences flowing therefrom, the court must have resolved the level of ordinary skill in the art as being that of an engineer with low to medium capability in the technology of powered system activation devices. This resolution of the level of ordinary skill in the pertinent art, presenting no genuine issues of material fact, is sufficient to shed light on the obviousness inquiry.

### Secondary Considerations

The considerations such as commercial success, long felt but unsolved needs, and the failure of others to invent are relevant to the obviousness inquiry.[22] Because the case before us is a review of the grant of summary judgment, we accept appellant's evidence on secondary considerations as true.[23] Ryko's chief executive officer stated in an affidavit that the car wash industry had not solved its long standing problems with automatic activators until the patented invention was introduced. Moreover, appellant also presented affidavits which showed that the efforts of others to solve the problems with automatic activators had failed. Furthermore, a few companies which copied the patented electrical keypad car wash activation system enjoyed commercial success.

██ Appellee argues that appellant failed to produce evidence of a nexus between the merits of the invention and its commercial success. Such a nexus is required to prove that the commercial success is not ascribable to other irrelevant commercial and economic factors.[24] However, prima facie evidence of nexus is established if there was commercial success and if the invention disclosed in the patent was that which was commercially successful.[25] Sufficient prima facie evidence was

before the court to withstand summary judgment on the nexus issue. Hence, we assume that a nexus existed between the commercial success and the merits of the invention.

Resolving all evidence and justifiable inferences in favor of appellant, the district court found that the secondary considerations weighed in favor of appellant. However, the district court determined that secondary considerations did not carry sufficient weight to override a determination of obviousness based on primary considerations. We conclude that such a determination can be made as long as the secondary considerations are contemplated by the court.[26] Our decision is not meant to weaken our previous statements that secondary considerations are not secondary in importance to primary considerations; we simply hold that a court is entitled to weigh all the considerations, primary and secondary, and then render its decision.

### Conclusion

This case presents no genuine issues regarding any material fact.

The district court found that the prior art taught one to use an electrical keypad device to send a signal, which, if proper, would activate a powered system by closing a switch to enable electrical current to flow to the system (e.g. an electronic garage door opener). The prior art also taught that automatic car wash systems could be activated by mechanical insertion devices. The principal difference between the prior art and the claimed invention is the use of an electronic keypad device, instead of a mechanical insertion device, for the specific purpose of selectively activating an automatic car wash system. We agree with the district court that the desir-

22. *Graham,* 383 U.S. at 17–18, 86 S.Ct. at 693–94.

23. *Adickes,* 398 U.S. at 158–59, 90 S.Ct. at 1608–09.

24. *Cable Electric Products, Inc. v. Genmark, Inc.,* 770 F.2d 1015, 1027, 226 USPQ 881, 887 (Fed. Cir.1985).

25. *Demaco Corp. v. F. Von Langsdorff Licensing, Ltd.,* 851 F.2d 1387, 1392, 7 USPQ 2d 1222, 1226

(Fed.Cir.), *cert. denied,* 488 U.S. 956, 109 S.Ct. 395, 102 L.Ed.2d 383 (1988).

26. *Newell Cos. v. Kenney Mfg. Co.,* 864 F.2d 757, 768, 9 USPQ 2d 1417, 1426 (Fed.Cir.1988) (secondary considerations of obviousness must be considered, but do not control the question of obviousness), *cert. denied,* 493 U.S. 814, 110 S.Ct. 62, 107 L.Ed.2d 30 (1989).

ability of the claimed combination was suggested by the prior art.

Moreover, the undisputed facts of record reflect that the level of ordinary skill in the art is typified by an engineer of low to medium skill in the technology of powered system activation devices. Appellant cites no evidence to refute that designing and assembling the claimed combination would have been obvious to an engineer adequately versed in the technology of powered system activation devices.

Accordingly, we conclude that the district court decision that the claimed invention would have been obvious is supported by the undisputed facts and that appellee was entitled to judgment as a matter of law. The district court correctly granted summary judgment to appellees based on patent invalidity because the invention, at the time it was made, would have been obvious to one of ordinary skill in the art. AFFIRMED.