The **HOOVER COMPANY, Plaintiff,**

v.

**BISSELL INC., Defendant.**

**No. 5:98–CV–1088.**

United States District Court,
N.D. Ohio,
Eastern Division.

March 19, 1999.

Laura J. Gentilcore, Ray L. Weber, Renner, Kenner, Greive, Bobak, Taylor & Weber, Akron, OH, Edward H. Graham, Maytag Corporation, Office Of General Counsel, Newton, IA, A. Burgess Lowe, The Hoover Company, North Canton, OH, for Hoover Company, The, plaintiff.

John C. Fairweather, Brouse & McDowell, Akron, OH, R. Terrance Rader, Eric M. Dobrusin, Glenn E. Forbis, John E. McGarry, Rader, Fishman & Grauer, Bloomfield Hills, MI, G. Thomas Williams, Rader, Fishman & Grauer, Grand Rapids, MI, for Bissell, Inc., defendant.

Laura J. Gentilcore, Ray L. Weber, Renner, Kenner, Greive, Bobak, Taylor & Weber, Akron, OH, Edward H. Graham, Maytag Corporation, Office Of General Counsel, Newton, IA, A. Burgess Lowe,

The Hoover Company, North Canton, OH, for Hoover Company, The, counter-defendant.

## OPINION AND ORDER

GWIN, District Judge.

On October 1, 1998, Defendant Bissell Inc. filed a motion for summary judgment in this patent infringement case [Doc. 26]. Bissell asks this Court for judgment finding it has not infringed on either patent owned by The Hoover Company ("Hoover") involved in this action. Defendant Bissell also seeks judgment finding that Plaintiff Hoover cannot recover damages for conduct preceding the filing of this action.

Upon review of the parties' briefs and the relevant record, the Court finds genuine issues of material fact on the issues of infringement and notice. Therefore, the Court denies Defendant Bissell's motion.

## I. FACTS

On May 11, 1998, Plaintiff Hoover filed an action alleging Defendant Bissell infringed two Hoover patents, U.S. Patent Numbers 5,134,750 ("750 patent") and 5,243,734 ("734 patent"). In its complaint, Plaintiff Hoover claims that the Bissell Opp vacuum cleaner infringes certain claims of the '750 patent. Hoover also says the Bissell Non Opp vacuum cleaner infringes claims of the '734 patent.

The '750 patent claims the invention of a vacuum cleaner with a conversion valve arrangement. The patented conversion valve allows the operator of an upright vacuum cleaner to redirect the suction flow from the floor nozzle to a separate hose for cleaning above-the-floor, such as for stairs or curtains. The patented arrangement says the conversion occurs with elevating or lowering the floor nozzle as the cleaner agitator is lifted off the floor during above-the-floor cleaning and then lowered when on-the-floor cleaning resumes.

The '734 patent claims the invention of a conversion valve arrangement for use in an upright vacuum cleaner with a push-pull handle. Like the '750 patent, the claimed invention of the '734 patent redirects suction flow to allow for both on-the-floor and above-the-floor cleaning. In the '734 patent, however, the conversion to above-the-floor cleaning occurs by manual operation of the conversion valve and can occur only if the vacuum cleaner handle is in its upright position.

Defendant Bissell seeks a determination that the Bissell Opp and Non Opp vacuum cleaners do not infringe the patents-in-suit. Bissell also seeks summary judgment finding Hoover's damages limited to the period after the filing of this action.

Upon review of the applicable legal standards, the Court finds summary judgment inappropriate on both issues.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56, summary judgment shall be rendered when requested if the evidence presented in the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In assessing the merits of a summary judgment motion, courts shall draw all justifiable inferences from the evidence presented in the record in the light most favorable to the nonmoving party. *Woythal v. Tex–Tenn Corp.*, 112 F.3d 243, 245 (6th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 414, 139 L.Ed.2d 317 (1997).

The party moving for summary judgment has the burden of demonstrating the absence of genuine issues of material fact. However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Accordingly, viewing the evidence in the light most favorable to the nonmoving party, the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251, 106 S.Ct. 2505.

This review does not change in patent infringement cases. *Avia Group Int'l v. L.A. Gear California, Inc.,* 853 F.2d 1557, 1561 (Fed.Cir.1988). However, because infringement is itself a question of fact, "a district court must approach a motion for summary judgment of infringement or non-infringement with a care proportioned to the likelihood of it being inappropriate." *SRI Int'l v. Matsushita Elec. Corp. of America,* 775 F.2d 1107, 1116 (Fed.Cir. 1985).

Applying these standards, the Court finds that summary judgment is inappropriate in this case and denies Defendant Bissell's motion.

### III.  ANALYSIS

#### A.  Claims Construction and Infringement

Plaintiff Hoover alleges Bissell's Non Opp and Opp vacuum cleaners infringe the '734 and '750 patents, respectively. In its motion for summary judgment, Defendant Bissell asks this Court to identify structures disclosed in the patents in suit that correspond with recited means elements in the claims and determine proper interpretation and construction of those claims. Bissell then asks this Court to find it has not infringed the Hoover patents.

■ A determination of infringement requires a two-step analysis. "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Ethicon Endo–Surgery, Inc. v. U.S. Surgical Corp.,* 149 F.3d 1309, 1315 (Fed.Cir. 1998); *Bai v. L & L Wings, Inc.,* 160 F.3d 1350, 1353 (Fed.Cir.1998).

■ The first step, claim interpretation, is solely a question of law and it therefore may be properly resolved on a motion for summary judgment. *Ohio Cellular Products Corp. v. Adams USA, Inc.,* 104 F.3d 376 (TABLE), 1996 WL 732296, *2 (Fed. Cir.1996) (citing *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979, 983–84 (Fed.Cir.1995) (*in banc*), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996)).

Although claim construction may be resolved upon a summary judgment motion, the Court finds it inappropriate to do so at this time. The Court has scheduled the parties here to argue their positions on claim construction in this and a companion case [1] in a *Markman* hearing within two weeks. This Court has directed the parties to submit a proposed order on claims construction. Because of the posture of this case, the Court declines to engage in claims construction at this time.

The second step in determining infringement requires comparing the accused product with a properly construed claim. Infringement is a question of fact, and the court may not grant summary judgment unless no issues of material fact remain. *SRI Int'l v. Matsushita Elec. Corp.,* 775 F.2d 1107, 1116 (Fed.Cir.1985).

■ Although the Court has not construed the claims yet, the Court need not delay its opinion on summary judgment until after claims construction has occurred. As explained below, there are genuine issues of material fact that cannot be overcome even after claims construction. The disparity in the parties' posi-

1. Case No. 5:98–CV–1089.

tions precludes summary judgment on the infringement issue.

In opposition to Bissell's motion, Plaintiff Hoover offers the affidavit of its Vice President of Engineering, Charles DeGraff. DeGraff proceeds claim by claim, comparing components of Bissell products with the patents in suit.

DeGraff concludes the Bissell products have directly corresponding structure and function to the claims disclosed in the Hoover patents. Significantly, DeGraff also alleges Bissell failed to include in its drawings a key component relating to a claim in the '734 patent.

The '734 patent provides for a conversion valve arrangement that redirects air flow into the vacuum, allowing the operator to use a hose and extension equipment to clean areas other than the floor, such as stairs and curtains. A "latching means" holds the conversion valve in its converted position.

Element (d) of Claim 1 in the '734 patent refers to a "handle including actuating means" which moves the "latching means" into the position in which it engages the conversion valve and holds it in place. According to the patent abstract, the vacuum cleaner handle must be in an upright position before using the actuating means to move the latching means into an engageable position. DeGraff says this "actuating means" is nothing more than a tab on the vacuum handle that moves the latching means into its engageable position.

The same "actuating means" allegedly exists in Bissell's Non Opp cleaner but is not revealed in Bissell's illustrations or video animation supporting its motion. Bissell allegedly reveals this actuating means in U.S. Patent 5,222,276 ("276 patent"), apparently assigned to Bissell upon its purchase of the company holding the original '276 patent.

The '276 patent reveals a tab that moves with the vacuum handle. Because of the tab's position, the conversion mechanism can be engaged when the handle is placed in an upright position.

The parties dispute whether the '276 patent represents how the Bissell Non Opp vacuum cleaner operates. Further, the drawing and videotape provided by Bissell are unclear how the Non Opp's conversion valve arrangement works.

Bissell's illustrations show the Non Opp from the bottom, which blocks the handle from view. The video animation starts from an overhead position showing the outside of the cleaner. The animation slowly reveals the inner structure of the vacuum cleaner, then tips it upward to reveal the underside of the vacuum. The animation goes on to show how the valve conversion operates.

Viewing the operation from underneath the vacuum fails to reveal whether or how the handle functions during the conversion process. The video does show the vacuum's wheels being moved downwards before the latching means can engage the valve conversion component. Nevertheless, the Non Opp's motor mechanism, to which the "actuating means" is attached in the '276 patent, is never shown.

In other words, Bissell's illustrations and video suggest that the latching means on the Non Opp can be engaged or disengaged, but does not fully reveal how that occurs. It never shows the connection between the handle and the base of the vacuum during the conversion process.

Thus, the parties disagree whether the '276 patent drawings conform to the accused products and whether Bissell accurately depicts how its conversion arrangement operates. The disputes are central to the asserted claims of Hoover's '734 patent.

Even after claims construction, infringement could not be determined on summary judgment because of these disputes. Therefore, genuine issues of material fact exist, precluding summary judgment on Hoover's infringement claim. The Court denies Defendant Bissell's motion.

## B. Notice

In deciding allowable damages in patent cases, knowledge of the accused infringement controls the period for which a patentee can collect damages. Title 35 U.S.C. § 287 states in relevant part:

(a) Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them ... *may give* notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or when ... this can not be done, by fixing to it ... a label containing like notice. In the event of failure to so mark, *no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice.* Filing of an action for infringement shall constitute such notice.

35 U.S.C. § 287(a) (emphasis added).

Hoover acknowledges that it did not mark these patents on its upright vacuum cleaners. Therefore, Hoover cannot collect damages for before the filing date of this action unless it provided actual notice to Bissell before filing the complaint. If Hoover establishes that it gave Bissell notice of infringement before the filing date, damages accrue from the earlier date.

■ The Court finds there is a genuine issue whether Hoover's letters gave Bissell notice of infringement. Because the Court cannot assign an effective date of notice, the Court denies Bissell's motion for summary judgment on the notice issue.

Hoover claims two letters, written in 1996 and 1997, notified Bissell it was infringing the '750 patent and '734 patent, respectively.

Hoover and Bissell exchanged several letters concerning the two patents. The first series of letters addressed the '750 patent. Hoover's letter of November 14, 1996, reads in pertinent part:

Enclosed is a copy of Hoover's Patent 5,134,750. We believe that certain of its claims, including claims 1, 2, 12 and 14, are relevant to Singer upright vacuum cleaner Models SB1276, SB1277 and SB1284.

Would you please review this matter and provide me with your thoughts by December 2, 1996.

Hoover initiated a second series of letters, pertaining to the '734 patent, on September 11, 1997. The letter is similar to the initial '750 patent letter:

Enclosed is a copy of Hoover's Patent 5,243,734. We believe that certain of its claims, including claims 1, 2, 3, 4, 8, 10, 11, 12, 13, 15 16 and 17 are relevant to Singer upright cleaner Model SB12770 and Bissell Models 3521–5 and 3510T. Please review this matter and provide me with your thoughts.

Bissell challenges the sufficiency of notice within the letters and contends it did not have notice of infringement until Hoover filed its complaint on May 11, 1998.

"For purposes of section 287(a), notice must be of 'the infringement,' not merely notice of the patent's existence or ownership. Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Amsted Industries, Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed.Cir.1994).

■ Hoover's initial letters on the '734 and '750 patents do not mention infringement. Yet a notice letter need not contain the term "infringe" to meet *Amsted*'s requirement that the patentee make a "specific charge of infringement." Words that convey the same meaning as infringement can be notice of infringement:

[N]otice need not necessarily include the word "infringement"; phrases such as "covered in" may be enough to suffice.... *Amsted* requires a "specific

charge" of infringement. Given the right context, the words "contained in" or similar words could be read synonymously with "infringement," and thus could be sufficient to put the defendant on notice that the patentee is charging infringement, which is all that the statute requires.

*Wokas v. Dresser Industries, Inc.,* 978 F.Supp. 839, 844 & n. 3 (N.D.Ind.1997) (citing *Konstant Products Inc. v. Frazier Industrial Co.,* 25 U.S.P.Q.2d 1223, 1226 (N.D.Ill.1992)). Whatever words are used, the patent owner must convey infringement for notice to be effective. *SRI Int'l v. Advanced Technology Laboratories, Inc., and ATL Washington, Inc.,* 127 F.3d 1462, 1469–70 (Fed.Cir.1997).

In both letters, Hoover asserted its belief that the enumerated claims were "relevant" to the listed Bissell products. The letters also specify the patent numbers at issue, the claims at issue, and corresponding Bissell products.

Although Hoover argues the only context in which one would assert that specific claims are "relevant" to specific products is infringement, its request for Bissell's opinion on the matter raises material issues whether the initial letters provided actual notice of infringement.

Bissell's responses to the letters also raise material questions of fact. Regarding the '750 patent, Bissell responded to Hoover's initial letter in the following way:

We are in the process of evaluating the claims of Hoover U.S. Patent No. 5,134,750 with respect to the Singer upright vacuum cleaner models SB 1276, SB 1277 and SB 1284.

Our initial review of this matter indicates there is no infringement issue. We are doing a further investigation to make sure of our conclusions. We expect to be able to give you a more complete reply within the next two weeks.

Ten days later, Bissell sent Hoover a follow-up letter containing detailed analysis of the products at issue as compared to the '750 patent. Bissell repeated its position first suggested in the December 2, 1996, letter:

This letter is a response to your letter of 14 November 1996 to Mr. Mark Bissell, president of Bissell Inc., and will supplement my letter to you of December 2, 1996.

We have studied the Hoover U.S. Patent No. 5,134,750, file history and prior art references to determine the scope of the claims with respect to the Singer upright vacuum models … Our study leads to the inescapable conclusion that no claim of the Hoover '750 patent would likely be held to be both valid and infringed by the manufacture, use, sale or offer for sale of the Singer vacuum models …

\*　　\*　　\*　　\*　　\*　　\*

… we believe that the Singer models 1276, 1277 and 1284 clearly avoid infringement of any claim of the Hoover '750 patent.

Hoover and Bissell exchanged several more letters comparing the patent claims with the products.

Bissell's response to Hoover's initial letter on the '734 patent was different from its response to the letter on the '750 patent. Instead of using the term "infringement," Bissell's October 10, 1997, response mirrored the language of Hoover's language in its initial letter:

We are unable to establish a relevant relationship between any of the claims of the '734 patent and the Singer upright model SB 12770 and the Bissell models 3521–5 and 3510T.

\*　　\*　　\*　　\*　　\*　　\*

… we come to the inescapable conclusion that there is no relevant relationship between any of the claims of the Hoover '734 patent and the [products at issue.]

In coming to its conclusion, Bissell explained that it "carefully reviewed" re-

viewed the '734 patent, including specifications, file history, prior art, and prosecution history. Its letter includes a detailed drawing of the '734 patent to support its assessment that there was "no corresponding structure or functional equivalent" of the patent in the Bissell products at issue.

Bissell's response in both series of letters may indicate it inferred that Hoover's initial letters were notice of infringement. Bissell's subjective belief that it was or was not infringing is irrelevant to notice analysis. *Amsted*, 24 F.3d at 187 ("It is irrelevant ... whether the defendant knew of the patent or knew of his own infringement."). However, Bissell's subjective belief that *Hoover was charging it* with infringement is relevant. *Wokas*, 978 F.Supp. at 845.

A few courts have found that acknowledgment of a charge of infringement satisfies the notice requirement of § 287. *See, e.g., Livesay Window Co. v. Livesay Industries*, 251 F.2d 469, 475 (5th Cir.1958); *Chubb Integrated Systems, Inc. v. National Bank of Washington*, 658 F.Supp. 1043, 1051 (D.D.C.1987) ("When one acknowledges ... that the adversary is claiming infringement, the law most certainly does not compel the patent owner to repeat it more explicitly") (quoting *International Nickel Co. v. Ford Motor Co.*, 166 F.Supp. 551, 567 (S.D.N.Y.1958)); *Ceeco Machinery Mfg., Ltd. v. Intercole, Inc.*, 817 F.Supp. 979, 987 (D.Mass.1992) (relying on *Chubb*'s conclusion that § 287 is satisfied when defendant understands patentee's communication to be "veiled charges of infringement").

The *Amsted* Court specifically declined to address whether the acknowledgment doctrine remains good law. *See Amsted*, 24 F.3d at 187 n. 5. After *Amsted*, with its emphasis on a patentee's burden to affirmatively notify an infringer, the better view of acknowledgment is that it raises a material issue whether a patentee provided actual notice.

If Bissell could conclude that Hoover charged infringement, certainly a fact finder could conclude the same. *Wokas*, 978 F.Supp. at 845. Evidence of acknowledgment may lend credence to Hoover's position that it notified Bissell, but it is not conclusive of an issue on which Hoover carries the burden of proving.

Because material issues regarding notice of infringement exist, summary judgment is inappropriate.

## IV. CONCLUSION

For the reasons stated herein, the Court finds there are genuine issues of material fact regarding whether Bissell infringed the '734 and '750 patents and whether and when Bissell received actual notice of infringement. Therefore, the Court denies Defendant Bissell's motion for summary judgment.

IT IS SO ORDERED.